```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Michael A. Kelley, Jr.,            :

      Plaintiff,            :      Case No. 2:15-cv-2233

    v.                         :

Frederick Shoemaker, et al.,       :      JUDGE ALGENON L. MARBLEY
                                                                Magistrate Judge Kemp

      Defendants.           :

REPORT AND RECOMMENDATION

On May 27, 2015, Plaintiff Michael A. Kelley, Jr. filed a motion for leave to proceed *in forma pauperis* and a proposed civil complaint seeking relief against four defendants: Retired Franklin County Common Pleas Judge Fred Shoemaker (who has sat by designation on the Ohio Court of Claims); retired Franklin County Common Pleas Judge Beverly Pfeiffer; Franklin County Municipal Court Judge (and former Magistrate) Denise R. Mathews; and Franklin County Magistrate Pamela Erdy.  After reviewing the financial information submitted in the motion for leave to proceed *in forma pauperis*, the Court determines that Mr. Kelley qualifies financially for a waiver of the filing fee, and the motion to proceed *in forma pauperis* (Doc. 1) is **GRANTED**.  Because Mr. Kelley is not paying a filing fee, however, his complaint is subject to an initial screening pursuant to 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915(a).  For the following reasons, based on the Court's review of the complaint, it will be recommended that the case be **DISMISSED**.

I.  Factual Background

Mr. Kelley's complaint, with exhibits, is 132 pages long. It is not exactly the "short and plain statement of the claim" to which Fed.R.Civ.P. 8(a)(2) refers.  Nonetheless, the Court will attempt to summarize its allegations.

It appears that Mr. Kelley contends that his federal constitutional rights were violated in various ways by decisions made by the four defendants, all Ohio judicial officers.  He has attached a number of exhibits, some of which are decisions signed by one of the defendants, and some of which contain his handwritten notes about such decisions.  The cases at issue are not new; some of them date back to 2001.  In his prayer for relief, Mr. Kelley simply asks this court to "make [him] whole ... concerning each instance."  To that extent, it appears that he wants this Court to award money damages against each of the defendants based upon rulings they made in state court cases involving Mr. Kelley.

## II. Legal Standard

The ability to proceed *in forma pauperis* was established by Congress under 28 U.S.C. §1915 in order to provide greater means of access to the judicial system for the indigent. Denton v. Hernandez, 504 U.S. 25, 31 (1992).  The statute allows, with proper showing of financial need, a petitioner to proceed in an action "without prepayment of fees or security thereof."  28 U.S.C. §1915(a)(1).  However, 28 U.S.C. §1915(e)(2) requires the Court to "dismiss the case at any time if the court determines that ... (B) the action or appeal (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  A suit is frivolous if it lacks any arguable foundation in either fact or law. Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A complaint fails to state a claim upon which relief can be granted, if, after accepting as true all well-pleaded allegations of the complaint, the allegations do not "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Court is mindful that pro se complaints are to be construed liberally in favor of

2

the pro se party. Haines v. Kerner, 404 U.S. 519 (1972); see also Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991). With these standards in mind, the Court conducts an initial screening of Mr. Kelley's complaint.

### III. Discussion

There are a number of different legal issues which are raised by Mr. Kelley's complaint. The statute of limitations for suits in a federal court against state officials for violation of constitutional rights is two years. Browning v. Pendleton, 869 F.2d 98 (6th Cir. 1989). Most, if not all, of the claims made by Mr. Kelley appear to involve events which happened more than two years ago. However, there is a more fundamental problem which prevents this Court from granting Mr. Kelley any relief, and that is based on the doctrine of absolute judicial immunity. As explained below, judges simply cannot be sued for damages for making decisions that litigants do not like, even if those decisions seem to be questionable, wrong, or even malicious. The merits of the decisions are irrelevant; the only pertinent question is whether the judge was acting as a judge - that is, in a judicial capacity - and whether the judge arguably had jurisdiction to make that decision. If so, the judge is immune from a suit for money damages.

This Court recently examined the historical basis of this doctrine, and explained it this way:

> The Supreme Court of the United States engaged in extensive discussion of the doctrine of "judicial immunity" in the 1871 case of Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871). That case arose out of a trial held in Criminal Court of the District of Columbia in which one John H. Suratt was tried for the murder of President Abraham Lincoln. (Mr. Suratt was admittedly a member of a group, including John Wilkes Booth, which had planned to kidnap President Lincoln in 1864; Suratt denied any knowledge

of an assassination plot, and the jury in his murder trial was unable to reach a verdict). During the trial, Judge Fisher, the presiding judge, was allegedly accosted and insulted by one of Suratt's attorneys, Joseph H. Bradley; Judge Fisher subsequently issued an order striking Mr. Bradley's name from the roll of attorneys authorized to practice in the District of Columbia courts. Mr. Bradley then sued Judge Fisher for money damages.

The Supreme Court, as it typically did in such cases, looked to English law for an answer to the question of whether such a suit could be maintained. The Court described what "has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country" this way:

> [I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.

Bradley v. Fisher, supra, at 347. In fact, the Supreme Court said that this doctrine "obtains in all countries where there is any well-ordered system of jurisprudence." Id. The Court then formulated what is still, today, the appropriate legal test for this situation: "judges of courts of ... general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Id. at 351. The only time a judge can be liable for a judicial act is if there was "the clear absence of all jurisdiction over the subject-matter." Id.

4

> In the ensuing years, the Supreme Court (as well as other federal and state courts) has been faced with numerous cases testing the limits of this principle. Some of them are hard cases on the facts; for example, the judge who claimed immunity in Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) had ordered the sterilization of a fifteen-year-old girl, without holding a hearing or appointing a guardian ad litem, based on her mother's claim that the girl was "somewhat retarded." The girl was not even informed of the nature of the operation, and did not learn that she had been sterilized until she married and was unable to get pregnant. Nevertheless, the Supreme Court held that because the judge sat on a state court which had general jurisdiction, and because that jurisdiction arguably covered cases where sterilization was requested, the judge had not acted in "the clear absence of all jurisdiction" and that he was immune from suit.

Barrett v. Marbley, 2014 WL 1308697, *3-4 (S.D. Ohio March 28, 2014), adopted and affirmed 2014 WL 4928950 (S.D. Ohio Oct, 1, 2014).  In Ireland v. Tunis, 113 F.3d 1435, 1441 (6th Cir. 1997), the Court of Appeals succinctly summarized these principles by noting that the "functional analysis" of a claim which might be barred by judicial immunity "turns on two factors": whether the judge in question performed a "judicial act" like issuing an order or signing a document like a warrant, a writ, or something else typically done by a judge; and whether "the parties dealt with the judge in his or her judicial capacity."  Id.

Here, although, again, it is a bit difficult to decipher Mr. Kelley's complaint, it appears that he bases his claim for damages on orders or decisions made by the four defendants in cases pending before them.  The only exhibits which bear their names (although the Court cannot find a document which has Judge Shoemaker's name on it) are court decisions or orders.  Nothing in the complaint suggests that Mr. Kelley dealt with any of the defendants in any capacity other than their positions as judges,

5

or that they did anything other than make decisions which he is dissatisfied with.  Under these circumstances, even if there are any claims in the complaint which would not be barred by the applicable two-year statute of limitations, Mr. Kelley cannot, because of the doctrine of judicial immunity, maintain a suit for damages against any of the defendants.  Consequently, his complaint fails to state a claim upon which relief can be granted and it seeks relief against defendants who are immune from such relief.  This case is therefore subject to dismissal under 28 U.S.C. §1915(e)(2).

## IV. Recommended Disposition

Based upon the foregoing, it is recommended that this case be dismissed in its entirety.  Should this recommendation be adopted, the Court should mail a copy of the complaint, this Report and Recommendation, and the Court's order of dismissal to the defendants.

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have a district judge review the Report and

Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P Kemp
United States Magistrate Judge

7